**Roofing Dynamics, Inc. v. Accurso**

*Jaclyn D. Levash, Joseph L. Doherty, IV* and *Julie Negovan*, for plaintiffs.

*Eric G. Marttila*, for defendants.

MCINERNEY, *J.*, October 10, 2013—

## I. BACKGROUND

The Agreement

In September 2004, Peter Accurso, as the contractor, entered into a written independent contractor agreement with Brian Land and Infra Red Services Co., as the company. According to the independent contractor agreement, the company was in the business of marketing and selling services, products, and materials for use in the construction and repair of industrial and commercial flat roofs and wanted to engage Mr. Accurso as an independent contractor to market and sell these products and services in a certain geographical region. The initial term of the agreement was four years followed by successive, two-year terms, which automatically renewed unless canceled by either party upon written notice to the other given at least 90 days prior to the end of the any term. Mr. Accurso worked under the independent contractor agreement until January 2012 when his services were terminated.

The Bucks County Action

On December 14, 2012, Mr. Accurso filed a praecipe for writ of summons in the Court of Common Pleas of Bucks County (the "Bucks County Action"). In addition to naming Infra-Red Services, Inc. and Mr. Land as defendants, the writ also named Roofing Dynamics, Inc. and Roofing Dynamics Group, LLC — entities where Mr. Land is also a principal — as defendants. With the filing of the praecipe for a writ of summons, Mr. Accurso immediately sought to obtain pre-complaint discovery related to monies he avers he is owed under the independent contractor agreement following the wrongful termination of the independent contractor agreement, among other things.

On January 11, 2013, the defendants in the Bucks County action filed an emergency motion for a protective order to quash the notice of deposition of Mr. Land and bar any and all pre-complaint discovery. That same day, the Honorable Alan M. Rubenstein issued a rule to show cause and stayed any and all discovery pending disposition of the motion. On February 8, 2013, Mr. Accurso filed a response to the motion and on February 28, 2013, the defendants filed a reply. By order dated April 30, 2013, Judge Rubenstein ordered the deposition be held in abeyance for a time for medical reasons related to surgery Mr. Land underwent on March 14th, but otherwise denied the defendants motion for a protective order.

On May 8, 2013, the defendants filed a motion for reconsideration of the April 30th order as well as a motion to compel Mr. Accurso to produce certain electronic records. On June 11, 2013, Judge Rubenstein issued an order denying the motion for reconsideration. And on June

17, 2013, Judge Rubenstein entered an order that granted the defendants' motion to compel unless Mr. Accurso filed a timely motion for a hearing, which he did on June 27, 2013.

On August 8, 2013, Mr. Land was deposed. On August 14, 2013 Mr. Accurso filed a motion to hold Mr. Land in contempt and for sanctions for Mr. Land's alleged nonproduction of requested documents, among other things. On August 19, 2013, Judge Rubenstein dismissed the motion to compel.

The Philadelphia County Action

On August 9, 2013, Roofing Dynamics, Inc. and Roofing Dynamics Group, LLC (collectively, "Roofing Dynamics") filed a complaint in the Court of Common Pleas of Philadelphia County, naming Mr. Accurso, Innovative Roofing Group, Inc., Roof Management Resources, RMR & Associates, Inc., Reynaldo Medina-Rucci, and John Does #1-5 as defendants (the "Philadelphia County Action"). In addition to seeking a preliminary injunction, the complaint asserted seven causes of action: breach of contract (against Mr. Accurso); breach of fiduciary duty (against Mr. Accurso); usurpation of corporate opportunity (against Mr. Accurso); fraud/fraudulent misrepresentation (against Mr. Accurso and Mr. Medina); intentional interference with prospective contractual relations (against all defendants); civil conspiracy (against all defendants); and misappropriation of trade secrets (against all defendants).

According to the complaint, Mr. Accurso was a trusted marketer and business associate for Roofing Dynamics starting in September 2004 when he entered into an independent contractor agreement with Infra-Red

Services, Inc., a predecessor of Roofing Dynamics, Inc. This relationship continued until Mr. Accurso's services were terminated by Roofing Dynamics Group, LLC on January 4, 2012. The complaint explained that in or about March 2006, Mr. Land/Infra Red Services Co. assigned the independent contractor agreement to Roofing Dynamics, Inc. pursuant to a provision in the agreement allowing unilateral assignment of the agreement by Infra Red Services Co. and that the agreement was later assigned in or about August 2011 to Roofing Dynamics Group, LLC pursuant to the same provision.

According to the complaint, the independent contractor agreement contained confidentiality and non-compete provisions that Mr. Accurso breached. The complaint alleged Mr. Accurso diverted business from Roofing Dynamics' customers to competitors, including upon information and belief two entities Mr. Medina is a principal of — Roof Management Resources and RMR & Associates, Inc. The complaint further alleged Mr. Accurso provided Mr. Medina and his two entities with Roofing Dynamics' confidential trade secret information and that all of the defendants conspired together to defraud Roofing Dynamics and divert its business to Mr. Medina and his two entities with Mr. Accurso receiving kickbacks on the diverted business through circuitous financial transactions.

Roofing Dynamics' Motion to Coordinate

On August 16, 2013, Roofing Dynamics filed a motion to coordinate the actions pursuant to Pennsylvania Rule of Civil Procedure 213.1. Roofing Dynamics sought to have the Bucks County Action stayed and that case and any and all further proceedings therein transferred to the Court of Common Pleas of Philadelphia County.

Having cited the factors laid out at Rule 213.1(c) for determining whether to order coordination and which location is appropriate for the coordinated proceedings, Roofing Dynamics argued coordination of the actions was proper because: there are common factual issues as the discovery Mr. Accurso seeks in the Bucks County Action overlaps with the discovery Roofing Dynamics will seek in the Philadelphia County Action; interpretation of the independent contractor agreement will be a predominant question of law; not coordinating the actions could result in duplicative and inconsistent rulings, orders, or judgments; judicial resources will be conserved; and settlement will be more likely if all the parties are brought before the same court. Roofing Dynamics further argued coordination of the actions in Philadelphia was proper because: the Commerce Program in the Court of Common Pleas of Philadelphia County specializes in business disputes; the Bucks County Action has not progressed to the same extent because a complaint has not been filed there; all of the responsible parties have already been named in the Philadelphia County Action; Mr. Medina and his two entities are domiciled in Philadelphia County; other parties are located in proximity to Philadelphia, and the witnesses, such as customer service reps located in New Jersey, would find traveling to Philadelphia more convenient.

On September 11, 2013, Mr. Accurso and Innovative Roofing Group, Inc. (collectively, "Accurso") filed a response in opposition to Roofing Dynamics' motion to coordinate. Therein, Accurso preliminarily took issue with what they perceived as Roofing Dynamics' obstruction of Mr. Accurso's attempts to conduct legitimate pre-complaint discovery to obtain information necessary

to prepare a complaint and argued, but for this conduct, Mr. Accurso would have already filed a complaint in the Bucks County Action and Mr. Land and his entities should not be permitted to benefit from this conduct. Accurso then argued the actions should not be coordinated as the factors laid out at Rule 213.1(c) are only minimally met, but if the actions were to be consolidated, the cases should be coordinated in Bucks County, not Philadelphia County.

Regarding coordination in general, Accurso acknowledged the two actions have common issues of fact and law concerning the independent contractor agreement, but otherwise denied coordination was proper, arguing there are different parties in the actions and refusing to coordinate would more likely result in settlement of the actions. Regarding coordination in Philadelphia versus Bucks County, Accurso argued, in terms of the convenience of the parties and witnesses, none of the parties other than the newly added parties, Mr. Medina and his two entities, have any affiliation or ties to Philadelphia and witnesses will include individuals from Pennsylvania, New York, and New Jersey who will to able to appear just as easily in Bucks County as Philadelphia County. Regarding coordination in Philadelphia versus Bucks County, Accurso also argued (1) Judge Rubenstein is familiar with the claims, issues, and parties and has issued multiple ruling and has motions pending and (2) Mr. Accurso would likely be prejudiced by coordination in Philadelphia because there is a motion for contempt pending in Bucks County and transfer may allow Mr. Land to avoid being held in contempt and the imposition of sanctions.

On September 27, 2013, Roofing Dynamics filed a reply in further support of their motion for coordination.

Therein, Roofing Dynamics stated:

> [Accurso] litter their response and accompanying brief to [Roofing Dynamics'] motion for coordination with numerous points that have no relevance to [Roofing Dynamics'] motion and are meant merely to sully the reputations of [Roofing Dynamics'] and their principals. The inescapable facts, which [Accurso] fail to address, are (1) [Mr. Accurso] *ha[s] not* filed a complaint in the Bucks County [A]ction, and (2) [Roofing Dynamics] *have* filed a complaint in this action. Along with the other facts set forth in the motion for coordination, these are sufficient reasons to grant [Roofing Dynamics'] motion.

(Pls.' Reply pp. 1-2.) Addressing the motion for contempt, Roofing Dynamics also stated the motion remains pending and if this court grants the motion for coordination and transfers the case to Philadelphia, it will have the ability to address the contempt motion at that time.

On October 2, 2013, Accurso filed a sur-reply mainly addressing what Roofing Dynamics maintained were the inescapable facts Accurso failed to address; that Mr. Accurso has not filed a complaint in the Bucks County Action and that Roofing Dynamics have filed a complaint in this action. Preliminarily, Accurso argued "[w]here, as here, [a party] comes to the [c]ourt with grossly unclean hands — having systematically and intentionally frustrated [the other party's] good faith efforts to file a complaint for more than half a year — such an assertion that the mere 'first' filing of a complaint controls disposition of the requested [m]otion to [o]rder [c]oordination is absurd on its face." (Defs.' sur-reply pp. 1-2.) In support of this assertion, Accurso later argued:

Because [Mr. Land and Roofing Dynamics] are solely responsible for [Mr.] Accurso's inability to file a complaint in the Bucks County Action to date, they should not reap some unwarranted benefit from their improper and arguably sanctionable conduct. Where said discovery has already commenced in Bucks County — notwithstanding that it has been largely obstructed and thwarted through the actions of [Roofing Dynamics and Mr. Land] — to order coordination of the cases by removing the first-filed Bucks County Action to Philadelphia would be unjust. The reality is that, but for the acts of [Mr. Land and Roofing Dynamics], [Mr.] Accurso would have already filed his complaint in the Bucks County [A]ction.

(Defs.' sur-reply p. 4.) Accurso also noted that since the filing of the motion to coordinate, Roofing Dynamics had file a motion to discontinue their action against the only individual defendant with a connection to Philadelphia County; Mr. Medina.[1]

## II. DISCUSSION

The issues of whether to coordinate as well as where to coordinate are reviewed for abuse of discretion. *Pennsylvania Manufacturers' Ass'n Inc. Co. v. Pennsylvania State Univ.*, 63 A.3d 792 (Pa. Super. Ct. 2013). In determining whether there was an abuse of

---

1. By letter dated October 3, 2013, Roofing Dynamics requested oral argument on its motion for coordination, asserting argument would be beneficial to completely address the procedural status of the actions and the law governing coordination. With a reply and sur-reply being filed, it was this court's opinion that it was provided with the facts, allegations, and legal positions of both parties to the point oral argument would have been redundant and any questions the court had regarding the exact procedural status of the Bucks County Action were immaterial. Accordingly, the court concluded oral argument was unnecessary.

discretion, the Superior Court has explained that whether it would have reached the same conclusion is immaterial. *Washington v. FedEx Ground Package Sys., Inc.*, 995 A.2d 1271, 1277 (Pa. Super. Ct. 2010). Rather, the question is whether the record provides a sufficient basis to justify the order of coordination. *Id.* If it does, no abuse of discretion exists. *Id.*

"In determining whether to order coordination and which location is appropriate for the coordinated proceedings," Pennsylvania Rule of Civil Procedure 213.1(c) provides that "the court shall consider, among other matters:"

(1) whether the common question of fact or law is predominating and significant to the litigation;

(2) the convenience of the parties, witnesses and counsel;

(3) whether coordination will result in unreasonable delay or expense to a party or otherwise prejudice a party in an action which would be subject to coordination;

(4) the efficient untilization of judicial facilities and personnel and the just and efficient conduct of the actions;

(5) the disadvantages of duplicative and inconsistent rulings, orders or judgments;

(6) the likelihood of settlement of the actions without further litigation should coordination be denied.

Pa. R. Civ. P. 213.1(c). In exercising its discretion, the trial court must consider these factors enumerated at Rule 213.1(c), but it is also free to consider other matters such as where suit was first filed. *Pennsylvania Manufacturers'*

244

*Ass'n*, 63 A.3d at 796. The court should also receive guidance "from the explanatory comment to Rule 213.1(c), which explains that the ultimate determination that [it] must make is whether coordination is 'a fair and efficient method of adjudicating the controversy.'" *Washington*, 995 A.2d at 1277, quoting Pa. R. Civ. P. 213.1 Explanatory comment 1990.

With these principles in mind, it was this court's determination that the actions should be coordinated and they should be coordinated in Bucks County by transferring the Philadelphia County Action to Bucks County. Preliminarily, however, the court would like to address the extensive argument the parties made regarding the fact that a complaint has been filed in the Philadelphia County Action, but not the Bucks County Action.

The only real significance this court saw to these facts in this case is that it was called on to decide the motion to coordinate as Rule 213.1(a) requires the motion for coordination be filed in the court in which a complaint was first filed. *See* Pa. R. Civ. P. 213.1(a) (providing that when there are "actions pending in different counties which involve a common question of law or fact..., any party, with notice to all other parties, may file a motion requesting the court in which a complaint was first filed to order coordination of the actions."). But deciding the motion does not change the fact that the court's ultimate task is to determine "whether to order coordination and which location is appropriate for the coordinated proceedings...." Pa. R. Civ. P. 213.1(c). And as will be discussed below, the court can actually properly consider where suit (versus a complaint) was first filed in deciding to transfer the other action(s) to that county.

Now, regarding coordination in general and, if so,

where to coordinate, the first factor the court must consider is whether there is a common question of fact or law that is predominating and significant to the litigation. Pa. R. Civ. P. 213.1(c)(1). There is no dispute that these actions contain common questions of law and fact involving the independent contractor agreement and who breached it, and that these questions will be predominating and significant to the litigation. Thus, this factor strongly favors coordination.

Next, the court must consider the convenience of the parties, witnesses and counsel. Pa. R. Civ. P. 213.1(c) (2). Here, the court determined convenience would be enhanced by litigating these matters in one forum versus two, but in terms of Philadelphia versus Bucks County, the geographic factor is insignificant. In terms of coordination in general, all involved will clearly benefit by having these actions litigated together rather than having them litigated separately in two different forums. But in terms of Philadelphia versus Bucks County, neither forum appeared to be more convenient than the other: Roofing Dynamics counsel is located in Philadelphia County, while Accurso's counsel is located in Bucks County; more parties appear to be located in Bucks County, but there is nothing particularly onerous about traveling between Philadelphia and Bucks County, *see, e.g., Catagnus v. Allstate Ins. Co.*, 864 A.2d 1259, 1266 (Pa. Super. Ct. 2004) (holding the decision to transfer a case from Philadelphia to Bucks County was error, and observing travel between Philadelphia and Bucks County is not particularly burdensome) and *Johns v. First Union Corp.*, 777 A.2d 489, 491-92 (Pa. Super. Ct. 2001) (concluding the trial court improperly transferred a case from Philadelphia to Bucks County and commenting on the close distance

between Philadelphia and Bucks County); and the same is true for any witnesses traveling to Philadelphia versus Bucks County or vice versa, whether they be in New Jersey, New York, or elsewhere in Pennsylvania.

The third and forth factors require the court to consider "whether coordination will result in unreasonable delay or expense to a party or otherwise prejudice a party in an action which would be subject to coordination" and "the efficient utilization of judicial facilities and personnel and the just and efficient conduct of the actions[,]" respectively. Pa. R. Civ. P. 213.1(c)(3)-(4). Here, the court considered the issues of: the pending motion for contempt; the litigation that has already occurred in Bucks County; and judicial efficiency in general.

First, as of the filing the papers regarding the motion for coordination, Mr. Accurso had a motion for contempt and sanctions against Mr. Land pending in Bucks County. While Roofing Dynamics argued this court could decide the motion if the Bucks County Action was transferred here, this court did not agree. "Each court is the exclusive judge of contempts against its process...." *Ricci v. Geary*, 670 A.2d 190, 191 (Pa. Super. Ct. 1996) (quotations omitted). As such, it would be improper for this court to decide whether Mr. Land was in contempt for violating one or more of Judge Rubenstein's orders. Thus, Mr. Accurso could be prejudiced if the court coordinated the actions as suggested by Roofing Dynamics, and this factor favored coordination in Bucks County.

Second, the litigation that has already occurred also favored coordination in Bucks County. The issue of pre-complaint discovery has been heavily litigated in Buck County, and to date, Judge Rubenstein has already issued six orders in the Bucks County Action. In terms

of efficiency, while the commerce program specializes in business disputes, in this case that fact is outweighed by the fact that more significant litigation has already occurred in Bucks County and Judge Rubenstein and Bucks County judicial personnel are already familiar with the claims, issues, and parties. Transferring the Bucks County Action to Philadelphia County would not ensure the efficient utilization of judicial facilities and personnel. Rather, efficiency would be enhanced by transferring the Philadelphia County Action to Buck County and Judge Rubenstein and who are already familiar with the claims, issues, and parties.

Finally, judicial efficiency in general favors coordination. Judicial resources will clearly be utilized more effectively if both actions are before the same court rather than litigated separately in two different courts.

The fifth factor requires consideration of "the disadvantages of duplicative and inconsistent rulings, orders or judgments" and favors coordination. Pa. R. Civ. P. 213.1(c)(5). For example, both actions involve interpretation of the independent contractor agreement. Coordinating the actions will ensure there are no inconsistent interpretations of the agreement. Coordination will also prevent res judicata and/or collateral estoppels issues, and a race to judgment.

The sixth and final factor laid out in Rule 213.1 requires the court to consider "the likelihood of settlement of the actions without further litigation should coordination be denied." Pa. R. Civ. P. 213.1(c)(6). In the opinion of this court, this factor did not weigh either for or against coordination as neither party's argument was particularly strong on the issue, nor did the court perceive any significant advantage or disadvantage to settlement

should coordination be denied, particularly where one of the actions (the Philadelphia County Action) essentially contains all of the parties to both actions so that they would be able to sit around the same table and negotiate. *Cf. Pennsylvania Manufacturers' Ass'n*, 63 A.3d at 796 (Strassburger, J., concurring) (noting the likelihood of settlement would be enhanced if all the parties "can sit around the same table and negotiate, with or without input from a judge").

Finally, in terms of where to coordinate, this court also considered that suit was first filed in Bucks County. In *Pennsylvania Manufacturers' Association*, the trial court granted a motion to coordinate and transferred an action filed in Centre County to Philadelphia County. 63 A.3d at 794. In doing so, the trial court considered that the Philadelphia County action was first-filed. *Id.* at 796. On appeal, the appellant argued this was a tangential consideration the trial court should not have examined. *Id.* The Superior Court, however, concluded this argument conflicts with the plain language of Rule 213.1 that the court shall consider the Rule 213.1(c) factors, among other matters. *Id.* The court then held the trial court must consider the enumerated factors, but is free to consider other matters such as where suit was first filed in making its determination. *Id.* In this case, while a complaint was first filed in Philadelphia, suit was first filed in Bucks County some eight months earlier. This fact favored coordination in Bucks County.

In sum, coordination is a fair and efficient method of adjudicating these actions, which contain common questions of law and fact. Moreover, the Buck County Court of Common Pleas is a fair and efficient forum for resolving these controversies as it: is where more

significant litigation has already occurred; is where the court and court personnel are more familiar with the claims, issues, and parties; is where suit was first filed; and would avoid prejudice to Mr. Accurso. Thus, this court properly determined the actions should be coordinated and that the actions would best be coordinated by transferring the Philadelphia County Action to Buck County.

## ORDER

And now, this 10th day of October, 2013, upon consideration of Roofing Dynamics, Inc. and Roofing Dynamics, LLC's motion for coordination, Peter Accurso and Innovative Roofing Group, Inc.'s response, Roofing Dynamics, Inc. and Roofing Dynamics, LLC's reply, Peter Accurso and Innovative Roofing Group, Inc.'s sur-reply, and in accordance with the opinion issued simultaneously hereto, it is hereby ordered and decreed that:

the above-captioned action and the action pending in the Court of Common Pleas of Bucks County under the caption *Peter Accurso vs. Infra-Red Services, Inc., Roofing Dynamics Group, LLC, Roofing Dynamics, Inc.*, and *Brian Land*, No. 2012-10507, are to be coordinated;

the actions are to be coordinated in the Court of Common Pleas of Bucks County;

the above-captioned action and any and all further proceedings therein are transferred to the Court of Common Pleas of Bucks County;

within ten days of the date of this order, Roofing Dynamics, Inc. and Roofing Dynamics, LLC shall serve, pursuant to Pa. R. Civ. P. 440, a copy of this order on all other parties in all actions subject hereto;

Peter Accurso and Innovative Roofing Group, Inc. shall pay the costs, if any, of coordination;

the Office of the Prothonotary of Philadelphia county shall send a certified copy of this order to the Court of Common Pleas of Bucks County; and

the Court of Common Pleas of Bucks County shall take such action as may be appropriate to carry out this order for coordination.